**UNITED STATES of America,**

v.

**Luis SANCHEZ, Luz Alvarez, Defendants.**

**No. 79 CR 21.**

United States District Court, E. D. New York.

Oct. 7, 1980.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Vivian Shevitz, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff.

Ira Leitel, Carol Mellor, New York City, for defendant Sanchez.

Bruce Provda, New York City, for defendant Alvarez.

### MEMORANDUM AND ORDER

NICKERSON, District Judge.

This matter was remanded by the Court of Appeals to this court for reconsideration and additional findings as to whether the prosecution carried its burden of showing that defendant Sanchez gave a valid consent to the search of the apartment in which he and defendant Alvarez were resid-

---

8. Plaintiffs paid assessments in taxes and interest of $11,364.46, Stipulation ' 13, and should recover that amount.

ing. 635 F.2d 47 (2d Cir. 1980). Familiarity with the Court of Appeals' opinion is assumed.

The Court of Appeals said:

"If the district court finds, in the light of 'the totality of all the circumstances,' that Sanchez voluntarily consented to the search, and not that he merely bowed to what he reasonably viewed as the exercise of authority, new judgments of conviction should be entered against Sanchez and Alvarez. If, on the other hand, such a voluntary consent is not found, the motion to suppress the items seized in Sanchez's apartment should be granted; a new trial should be ordered as to Sanchez, and the district court should determine whether the non–excludable evidence against Alvarez was sufficient to warrant a new trial as to her."

In *Schneckloth v. Bustamonte*, 412 U.S. 218, 224–225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973), Mr. Justice Stewart discussed the inadequacy of the word "voluntary" to describe the issues at stake in determining whether a defendant has given a valid consent. He quoted from Bator & Vorenberg, *Arrest, Detention, Interrogation and the Right to Counsel: Basic Problems and Possible Legislative Solutions*, 66 Colum.L.Rev. 62, 72–73 (1966), that "[e]xcept where a person is unconscious or drugged or otherwise lacks capacity for conscious choice, all incriminating statements—even those made under brutal treatment—are 'voluntary' in the sense of representing a choice of alternatives." 412 U.S. at 224, 93 S.Ct. at 2046. He also quoted 3 Wigmore, Evidence § 826 (Chadbourn rev. 1970) as follows: "When, for example threats are used, the situation is one of choice between alternatives, either one disagreeable, to be sure, but still subject to a choice. As between the rack and a confession, the latter would usually be considered the less disagreeable; but it is nonetheless a voluntary choice." 412 U.S. at 224, n. 7, 93 S.Ct. at 2046 n. 7.

The opinion in the *Schneckloth* case concluded that the term " 'voluntariness' has reflected an accommodation of the complex of values implicated in police questioning of a suspect," that "[a]t one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws," that "[a]t the other end of the spectrum is the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness, and that the possibility of unfair and even brutal police tactics poses a real and serious threat to civilized notions of justice." 412 U.S. at 224–225, 93 S.Ct. at 2046.

Citing the *Schneckloth* opinion this court in *United States v. Iovine*, 444 F.Supp. 1085, 1087–88 (E.D.N.Y.1978), discussed the issue of the validity of a consent to search in the following terms:

[A]t least where the defendant has his wits about him, a consent is almost always "voluntary" in the sense that it represents an exercise of the will to make a deliberate choice among alternatives. Indeed, a consent to a search made in apprehension even of the continuation of the infliction of bodily harm is in the fullest sense the result of a rational and "voluntary" choice.

\*     \*     \*     \*     \*     \*

To make the result turn on whether the consent is "voluntary" is thus to ask that word to bear far more than its natural meaning and to use it to label the result of an assessment of considerations often having little if anything to do with whether the defendant has made a conscious and intelligent choice.

\*     \*     \*     \*     \*     \*

It is thus the arbitrary and unreasonable activities of the police against which the Fourth Amendment protects. In most "consent" cases we begin, in other words, with an examination of what the police did and not with the "voluntariness" of the defendant's choice, though his state of mind, taking into account such factors as his age, his intelligence, and his experience, if any, with the law, is relevant because it bears upon whether the actions of the police are "fair." In short, if we are to respect the values

embodied in the Fourth Amendment, where consent is obtained by "unfair" or "brutal" or "uncivilized" means, the search is "unreasonable" whether or not the consent is the product of a rational and therefore "voluntary" choice.

444 F.Supp. at 1087–88.

■ As the *Iovine* opinion recognized, a consent to a search, even though not the product of coercion or deceit, is invalid where it is "unfairly" obtained, as, for instance, where it is merely an acquiescence in a mistaken claim of lawful authority to search irrespective of consent, citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Applying these principles this court found that Sanchez had made a valid consent.

After Ortega asked Sanchez "if I could go in to look for documents" in the apartment, Sanchez responded, "go ahead and look. You won't find anything." The Court of Appeals has directed this court to make explicit findings as to whether Sanchez in making this response reasonably believed the officers were asserting authority to and would enter regardless of what he said and whether he merely submitted to such an assertion of authority. Under the authority of *Bumper v. State of North Carolina, supra*, a consent given under such circumstances would plainly have been invalid because "unfairly" obtained.

■ In this case, this court finds that, under the totality of all the circumstances, the prosecution carried its burden of showing a valid consent. Sanchez when he told the agents to "go ahead" was not under the impression that he had no choice or that the officers would enter regardless of what he said. As this court said in its prior opinion, he was not misled. He did not merely bow to what he viewed as the exercise of authority by the agents. He believed that a ready consent would tend to support his later assertions to the agents that he knew nothing of the narcotics and was merely watching the apartment for another.

New judgments of conviction shall be entered against Sanchez and Alvarez. So ordered.